```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND


UNITED STATES OF AMERICA      *

     v.                       *    Case No. SAG-23-0128

     TYQUAN FORD              *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

**MOTION TO SUPPRESS WARRANTLESS SEARCH AND SUBSEQUENT STATEMENT**

Now comes the Defendant, Tyquan Ford, by his attorney, Law Offices of Gerald C. Ruter, P.C. and pursuant to F.R.Cr.P 12, requests this Honorable Court to suppress the warrantless search of the Defendant's person and subsequent statement made by the Defendant following his unlawful seizure and for reasons states as follows:

1. Mr. Ford is charged by indictment with possession of a controlled substance with intent to distribute.

## Background

2. Discovery received in this case states that on April 8, 2022, at around 2:30 p.m. Det. Youman, a Carroll County Sheriff's Office Detective was on a surveillance near the corner of James and Winters Steets in Westminster. It is, states Det. Youman, a "high crime and drug trafficking area."

The Detective witnessed several known drug users/dealers in the area, including three he named. It was those three that the detective made specific reference to in his report. While

1

Michele Auberger was on her phone walking with Grace Marshall and Christopher Gonder, the Detective saw "an unknown silver in color sedan stop . . . and two males exited the vehicle." One of those was later identified as "Defendant Tyquan Samuel Ford a/k/a/ "Pug" a/k/a "G-Bbaby" [sic]. The Detective saw what he believed to be a drug transaction between Marshall and Ford. He saw Marshall return to her car and sit in it. Detective Youman then called other deputies and advised them "to make contact with the group of individuals."

Detective Youman then saw Master Deputy Lookingbill exit his vehicle and saw Ford flee "unprovoked". Lookingbill, "after a short foot chase" detained Ford. Thereafter, Marshall was stopped by another detective (Schue). She told the detective who stopped her that she had just purchased cocaine from Ford The vials in her possession were of the "same type" seized from Ford.

Ford was searched by Lookingbill and found to be in possession of 9 glass vials of suspected cocaine contained inside a plastic baggie. The gross weight was 19.8 grams. In addition, two cell phones were seized from him.

According to Detective Youman, Ford was transported to a Maryland State Police barrack where Ford was questioned following an advisement of his rights. Ford, while in police custody, told Tpr. Ward that he does "not do cocaine" and visits

"Westminster numerous times a month to meet with several women" without giving any further explanation.

3. Detective Lookingbill's report makes it clear he did not see any alleged hand-to-hand drug transaction. His report merely mirrors that of Detective Youman to the point where Lookingbill approached the individuals and asked "hey guys what's up" when Ford ran from him and was shortly thereafter detained by Lookingbill. He searched Ford and found the drugs above referenced. Lookingbill later spoke with Marshall who had been stopped by Schue, and she admitted she had purchased cocaine from Ford and paid him $70.00.

4. Deputy Schue reported he was on routine patrol when he happened to see Marshall drive past him. He recognized her car and Marshall as being known to him as a drug user. He decided to follow Marshall and he advised other officers in the area. While Schue was watching Marshall, he reports that Youman stated (presumably by police radio) that he had just seen Marshall engage in a hand-to-hand drug transaction. Although Schue did not see any drug transaction, he decided to follow Marshall from the area where he had seen her park and he stopped her. Schue asked Marshall "what drugs she had just bought"" and she showed Schue the vial she had in her bra as well as a vial inside the car.

**Argument**

A warrantless arrest must be preceded by the establishment of probable cause for an officer to do so.  See <u>United States v. Watson</u>, 423 U.S. 411 (1976).  Probable cause is determined by "the totality of the circumstances."  <u>Illinois v. Gates</u>, 462 U.S. 213 (1983).  A law enforcement officer may make an arrest of a suspect if the officer has probable cause to believe the suspect has committed a felony even if not committed in the presence of the arresting officer.  <u>United States v. Collins</u>, 412 F.3d 515 (4th Cir. 2005); <u>United States v. Humphries</u>, 372 F.3d 653 (4th Cir. 2004).

Detective Lookingbill lacked probable cause to arrest and search Ford and pursuant to <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963), the fruits of an illegal arrest must be suppressed.

It also follows that any statement made by a suspect following an illegal arrest must be suppressed should there be a direct link between the illegal arrest and the discovery of incriminatory evidence with no attenuation.  <u>United States v. McKinnon</u>, 92 F.3d 244 (4th Cir. 1996).  Any statement made by Ford in this case following his illegal arrest cannot be said to have been made voluntarily.

In addition, there is no evidence, other than a report by Youman, that a Maryland State Trooper advised Ford of his <u>Miranda</u> rights.

4

As a result, this Court should suppress any statement made by Ford following his arrest.

**WHEREFORE,** it is prayed the Court grants the relief requested.

Respectfully Submitted,

/S/ Gerald C. Ruter
_____
Law Offices of Gerald C. Ruter, P.C.
9411 Philadelphia Road, Suite O
Baltimore, Maryland 21237
(410)238-800
Ruterlaw@verizon.net

### Request for Hearing

Pursuant to Local Rule 105.6, a hearing is requested on the Defendant's motion.

/s/ Gerald C. Ruter
_____
Gerald C. Ruter

### Certificate of Service

**I HEREBY CERTIFY** that on this 5th day of March 2024, a copy of the foregoing was electronically delivered to all counsel of record by CM/ECF.

/S/ Gerald C. Ruter
_____
Gerald C. Ruter

5