IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.  SAG-23-0128** |
| **TYQUAN FORD,** | |
| **Defendant.** | |

## GOVERNMENT'S RESPONSE IN OPPOSITION OF DEFENDANT'S MOTION TO SUPPRESS WARRANTLESS SEARCH AND SUBSEQUENT STATEMENT

The United States of America respectfully submits this Opposition to Defendant Tyquan Ford's ("Defendant" or "Ford") Motion to Suppress Warrantless Search and Subsequent Statement ("Motion").  ECF No. 45.  Law enforcement, based on their collective knowledge, had reasonable articulable suspicion to conduct a *Terry* stop and probable cause to arrest and search the Defendant. Because the Defendant's arrest was lawful, the Defendant's subsequent post-*Miranda* statements are admissible based on the officer's credible statements that he administered the requisite *Miranda* warnings and that the Defendant knowingly and voluntarily waived his rights by continuing to speak to police.

### STATEMENT OF FACTS

On April 8, 2022, at approximately 2:30 p.m., Carroll County Sheriff's Deputies (hereinafter referred to as "CCS Detective") were conducting surveillance around Winters Street and James Street, Westminster, MD.  This area is well known to the CCS Detectives based on numerous prior arrests and investigations for drug trafficking.

CCS Detective Schue ("Schue") observed a vehicle driven by Grace Marshall ("Marshall"), a known drug user.  He alerted CCS Detective Youman ("Youman") who in turn

1

began surveillance in the area.  During his surveillance, Youman saw two individuals he knew from a previous narcotics investigation to be a drug user and a drug dealer walking in the area, one of whom stopped to converse with Marshall.  At about the same time, Youman observed a silver sedan stop on Winters Street near James Street and saw the Defendant and another man, get out of the car.  The Defendant then conversed with Marshall and dropped a small item into Marshall's hand.  Based on his training and experience, Youman believed that he had just witnessed a hand-to-hand drug transaction.  Youman then communicated his observations to Schue and CCS Detective Lookingbill ("Lookingbill") and asked them to stop the Defendant and Marshall for further investigation.

Lookingbill approached Marshall, the Defendant and the other man who got out of the silver sedan.  Upon seeing Lookingbill's patrol vehicle, one of the men walked behind a fence for a few seconds and came back out.  Based on his training and experience, Lookingbill believed that the individual had just attempted to hide or dispose of illegal items because a police officer was about to approach him.  Lookingbill, dressed in a police uniform with "POLICE" printed on the vest in large yellow letters, got out of his patrol car and said, "Hey guys, what's up."  The Defendant then immediately took off running.  Lookingbill chased the Defendant for a short period of time before ultimately apprehending him.  While Lookingbill was attempting to put handcuffs on the Defendant to restrain him, he observed the Defendant trying to get his right hand in his "dip" area, which Lookingbill knows through his training and experience is where individuals often place narcotics or firearms.

Schue observed Marshall drive away from the scene.  Shue immediately conducted a traffic stop and once she was stopped, asked her (Marshall) what drugs she had just bought.  Marshall reached into her bra and showed Schue a vial containing a white rock substance, which Schue

believed to be cocaine.  Marshall also advised that there was another glass vial on the seat.  Schue

collected the evidence, returned to the scene, and advised Lookingbill what he found with

Marshall.

Lookingbill placed the Defendant under arrest based on Youman's observations of the

Defendant's hand-to-hand drug transaction with Marshall, and Schue's recovery of suspected

cocaine from Marshall.  Lookingbill placed the Defendant under arrest and found a clear baggie

containing nine glass vials of a white rock substance, matching what was found on Marshall, and

seventy dollars on the Defendant's person.  Lookingbill later spoke to Marshall who, after waiving

her *Miranda* rights, admitted that she bought two vials of cocaine from the Defendant for seventy

dollars.

Youman brought the Defendant to the Maryland State Police Barrack for an interview.

Youman advised the Defendant of his *Miranda* rights in the presence of another officer.  The

Defendant knowingly and voluntarily waived his *Miranda* rights and spoke to law enforcement.

The Defendant stated that he "did not do cocaine" and that he went to "Westminster several times

a month to meet with several women in the area."

## **LEGAL STANDARD**

On a motion to suppress the burden of proof is on the defendant seeking to suppress the

evidence.  *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).  Once the defendant

establishes a basis for his motion to suppress, the burden shifts to the government to prove the

admissibility of the challenged evidence by a preponderance of the evidence.  *United States v.*

*Matlock*, 415 U.S. 164, 177 n. 14 (1974) ("[T]he controlling burden of proof at suppression hearings

should impose no greater burden than proof by a preponderance of the evidence.").  Where a

defendant seeks to suppress a statement under *Miranda v. Arizona*, 384 U.S. 436 (1966), the

government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

## LEGAL ARGUMENTS

I.     **THE DEFENDANT'S STOP, ARREST, AND SEARCH DID NOT VIOLATE THE FOURTH AMENDMENT.**

### A. Applicable Law

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." U.S. Const. amend. IV. Generally, warrantless seizures and searches are per se unreasonable, subject only to a few well-established exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *see also Riley v. California*, 573 U.S. 373, 382 (2014) (stating that, "[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement"). The government bears the burden of justifying a warrantless seizure. *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018).

### 1. *Terry* Stops

What has become known as the "*Terry* stop and frisk" is one of the exceptions to the warrant requirement. *See Terry v. Ohio*, 392 U.S. 1 (1968). A police officer may conduct a brief investigatory stop, known as a *Terry* stop, "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Once such a stop is conducted, the officer may inquire further to verify or dispel the officer's suspicions, and, if the officer reasonably believes that the suspect may be armed and dangerous, the officer may conduct a brief pat-down for weapons. *See Terry*, 392 U.S. at 23, 30.

The level of suspicion required for a *Terry* stop is "less demanding than that for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence."

*United States v. Sokolow*, 490 U.S. 1, 7 (1989).  In evaluating the validity of a *Terry* stop, courts consider "the totality of the circumstances."  *Sokolow*, 490 U.S. at 8.  Factors which alone may be "susceptible of innocent explanation" can "form a particularized and objective basis for a stop when taken together."  *United States v. Arvizu*, 534 U.S. 266, 277–78 (2002).  While an officer's "hunch" will not justify a stop, *Terry*, 392 U.S. at 27, courts must permit "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *Arvizu*, 534 U.S. at 273*; United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (reviewing courts should "give due weight to common sense judgments reached by officers in light of their experience and training").  The Supreme Court and the Fourth Circuit have held that the combination of presence in an area known for heavy narcotics trafficking and unprovoked flight upon seeing police arrive was enough to support a reasonable suspicion under *Terry*.  *See Wardlow*, 528 U.S. at 124; *United States v. Johnson*, 599 F.3d 339, 344–46 (4th Cir. 2010).

Officers conducting a *Terry* stop are authorized to "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop."  *United States v. Hensley*, 469 U.S. 221, 235 (1985).  Even a "complete restriction of liberty is valid," so long as it lasts "no longer than necessary to verify or dispel the officer's suspicion."  *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995).  Thus, "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest."  *Id.* at 1109–10.

### 2.  Warrantless Arrests

Additionally, a "warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence."  *District of Columbia v. Wesby*, 583

U.S. 48, 56 (2018).  Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent [person] in believing that the suspect had committed or was committing an offense."  *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000).  While probable cause requires more than "bare suspicion," it requires less than the evidence necessary to convict.  *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998).  "In assessing whether probable cause exists, [a court] must examine the totality of the circumstances."  *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000).  The Supreme Court has held that "even a very minor criminal offense" committed in the presence of a law enforcement officer may provide probable cause for arrest.  *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001).

### 3.  Warrantless Searches and Seizures Incident To Arrest

It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.  *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006)(citing *United States v. Robinson*, 414 U.S. 218, 224 (1973).  This exception provides that when law enforcement officers have probable cause to make a lawful custodial arrest, they may—incident to that arrest and without a warrant—search "the arrestee's person and the area within his immediate control."  *Id*. (quoting *Chimel v. California*, 395 U.S. 752 (1969).  Such searches have long been considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence."  *New York v. Belton*, 453 U.S. 454, 457 (1981).  However, "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search."  *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979). This is a "bright line" rule of constitutional law.  *Currence*, 446 F.3d at 556.

6

### 4. Collective Knowledge

Under the collective knowledge doctrine, when an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such an action himself. *United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011). The knowledge is imputed from one officer to another such that the officers collectively are assumed to have actual knowledge of the imputed fact. *United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021) (quoting *United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011). Accordingly, there can be sufficient probable cause to justify an arrest when some, but not all, of an investigative team have actual knowledge of the facts underlying the probable cause. *Id*; *see also United States v. Gaither*, 527 F.2d 456, 458 (4th Cir. 1975) (discussing probable cause for arrest and holding "that probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest") (internal quotation marks omitted), cert. denied, 425 U.S. 952 (1976).

### B. Lookingbill Had Reasonable Articulatable Suspicion To Initially Stop The Defendant.

While Defendant does not explicitly argue to the contrary in his Motion, the *Terry* stop was justified because the CCS Detectives had a reasonably articulable suspicion that criminal activity was afoot. Here, not only was the Defendant present in a known drug-trafficking area before fleeing, but the officers believed he was actually engaged in a hand-to-hand drug transaction with a known drug user. Under the collective knowledge doctrine, knowledge of the potential drug transaction Youman observed would have been imputed to Lookingbill to bolster his suspicion that the Defendant was involved in a crime and the basis for the initial stop.

Even without the collective knowledge doctrine, the Defendant fleeing after Lookingbill simply asked, "Hey guys, what's up," while in a known drug-trafficking area is more than enough

reasonable suspicion that the Defendant had committed a crime to justify a *Terry* stop.  *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Johnson*, 599 F.3d 339, 344–46 (4th Cir. 2010).  The Defendant was then held for a short period of time while law enforcement investigated the potential drug transaction further and confirmed that the Defendant sold Marshall drugs.  This is a proper investigatory stop under *Terry*.

### C.  Lookingbill Had Probable Cause To Arrest The Defendant.

Lookingbill had probable cause to arrest the Defendant without a warrant because, under the totality of the circumstances, based on what he personally witnessed and the collective knowledge of his fellow officers, he reasonably believed the Defendant had just committed a felony, that is distributed suspected cocaine to a known drug user.

In this case, Youman was surveilling someone he knew to be a known drug user in an area that was well known for high crime and drug trafficking.  He personally observed the Defendant get out of a car, approach Marshall, and drop a small object into her hand.  Based on his training and experience, Youman reasonably believed the Defendant provided drugs to Marshall.  He communicated that observation to Lookingbill and Schue and asked them to approach the individuals involved in the drug transaction.  When Lookingbill approached the Defendant, he immediately fled.  At the same time, Schue stopped Marshall, who indicated that she had just purchased drugs from the Defendant.  Schue communicated this to Lookingbill.  It was only at this point that the Defendant was placed under arrest.

It is irrelevant that Lookingbill, as the arresting officer, did not personally observe the hand-to-hand transaction or talk to Marshall before arresting and searching the Defendant. Youman's and Schue's knowledge of those events was communicated and imputed to Lookingbill

under the collective knowledge doctrine, and that collective knowledge was sufficient and provided the probable necessary to justify the arrest.

### D.  Officers Were Justified In Searching The Defendant Incident To Arrest.

To the extent the Defendant argues that the search of his person, in which the CCS Detectives recovered a baggie containing nine glass vials of a white rock substance and seventy dollars, was improper, that argument would fail because it was a valid search incident to a lawful arrest.  As discussed above, the CCS Detectives had probable cause to arrest the Defendant. Accordingly, the search of his person immediately following the Defendant's lawful arrest falls squarely within the search incident to arrest exception to the warrant requirement of the Fourth Amendment.  See *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006).

In sum, based on the totality of the circumstances and the collective knowledge doctrine, law enforcement had both a reasonably articulable suspicion to initially stop and seize the Defendant, as well as probable cause to arrest and search the Defendant without a warrant. Therefore, the Court should not suppress any of the evidence of that search.

## II.     THE DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED.

### A.  Applicable Law

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In order to protect this right, the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), adopted prophylactic procedural rules that must be followed in custodial interrogations.  *United States v. Parker*, 262 F.3d 415 (4th Cir. 2001).  *Miranda* warnings are required when a subject is interrogated while in custody.[1] *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Bell*, 901 F.3d 455, 462 (4th Cir. 2018)

---

[1] There is no dispute in this case that the interview at issue would be considered a custodial interrogation.

("[T]he Supreme Court in *Miranda* adopted a set of procedural rules that apply when a suspect is subjected to custodial interrogation ...."). The warnings may be oral or written. *United States v. Dire*, 680 F.3d 446, 474 (4th Cir. 2012), cert. denied, 568 U.S. 1145, 133 S.Ct. 982, 184 (2013). Notably, there is no precise formulation of the warnings that is needed to satisfy *Miranda's* strictures. *Id*.

An individual may nonetheless waive his rights and voluntarily submit to custodial interrogation. To be valid, the waiver must be voluntary "in the sense that it was the product of a free and deliberate choice," and it also must be made knowingly, or "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Courts examine the totality of the circumstances to determine whether a *Miranda* waiver was voluntary, knowing, and intelligent. *United States v. Jones*, 747 F. App'x 131 (4th Cir. 2018). Ordinarily, courts do not suppress post-*Miranda* statements unless they are "coerced confessions procured by means 'so offensive to a civilized system of justice that they must be condemned.'" *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (quoting *Miller v. Fenton*, 474 U.S. 104, 109 (1985)).

### B. Officers Advised The Defendant His *Miranda* Rights, Defendant Indicated He Understood His Rights, Waived Those Rights, And The Defendant Voluntarily Made Subsequent Post-*Miranda* Statements.

Defendant also moves to suppress the statements he made during his post-arrest interview on April 8, 2022. He first argues that his statements should be suppressed as the result of his illegal arrest. However, as discussed above, because the Defendant's arrest complied with the Fourth Amendment, this argument is without merit.

Secondarily, the Defendant argues that his statements should be suppressed because there is no evidence other than law enforcement reports that show the Defendant knowingly and voluntarily waived his *Miranda* rights. In other words, the Defendant is arguing that his statements should be suppressed because there is no written *Miranda* waiver to corroborate law enforcement reports that the Defendant was administered his *Miranda* warnings. That is not required by law.

At the Motions hearing, Youman will testify that he orally administered the *Miranda* warnings to the Defendant and that the Defendant voluntarily waived his rights and agreed to answer questions. The fact that there is not a signed *Miranda* waiver form does not vitiate the fact that the Defendant verbally acknowledged his *Miranda* rights and voluntarily decided to continue speaking with law enforcement. *See United States v. Umana*, 750 F.3d 320, 344 (4th Cir. 2014) ("A suspect impliedly waives his *Miranda* rights when he acknowledges that he understands the *Miranda* warning and then subsequently is willing to answer questions."). The credible testimony of law enforcement is, by itself, sufficient to prove by a preponderance of the evidence that the Defendant waived his *Miranda* rights. *See United States v. Massey*, 257 F. App'x 662, 664 (4th Cir. 2007) (declining to "second-guess the district court's credibility determinations" where the district court decided Miranda warnings had been administered based only on a finding that law enforcement witnesses were more credible than defendant); *United States v. Coker*, 39 F. App'x 939, 940 (4th Cir. 2002) (same); *United States v. Carter*, No. RDB-18-0174, 2018 WL 6305782, at *5–6 (D. Md. Dec. 3, 2018)(finding that the defendant knowingly and voluntarily waived his Miranda rights based on only officer testimony).

To the extent the Defendant is attacking the voluntariness of his statements, he does not and cannot point to any circumstances of the interrogation that was coercive or that caused his will to be "overborne" or his "capacity for self-determination to be critically impaired." *United States*

*v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987). As discussed above, the Defendant was legally arrested and properly advised of his rights. At no time did the Defendant request that the interview be stopped for any reason. Law enforcement was cordial and professional, and they did not make any threats or promises or otherwise engage in coercive conduct. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986)("[C]oercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary' within the meaning of the Due Process Clause."). To the contrary, after verbally acknowledging that he understood his rights, the Defendant willingly continued to speak with law enforcement, impliedly waiving his *Miranda* rights. *See Umana*, 750 F.3d at 344.

Accordingly, the Defendant's post-arrest statements that he does "not do cocaine" and that he visits "Westminster numerous times each month to meet with several women" should not be suppressed because they followed a valid arrest and were made after the Defendant was administered and then knowingly and voluntarily waived his *Miranda* rights.

**CONCLUSION**

For all of the foregoing reasons, the Court should deny Defendant's Motion in its entirety.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:

<u>        /s         </u>
LaRai Everett
Assistant United States Attorney